## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MILLER LEGAL, LLP, d/b/a BANNER LEGAL**, a District of Columbia Limited Liability Partnership, 700 12th Street NW Suite 700, Washington, DC 20005,<br><br>Plaintiff,<br><br>v.<br><br>**PETER MILLER**, a resident of the State of California, 325 S Sierra Ave. #29 Solana Beach, CA 92075,<br><br>and<br><br>**MILLER DELLAFERA, PLC**, a Virginia Professional Limited Liability Company, PMB 404, 3420 Pump Road, Henrico, VA 23233-1111,<br><br>Defendants. | Civil Action No. _____<br><br><br>DEMAND FOR JURY TRIAL |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Miller Legal, LLP d/b/a Banner Legal ("Banner" or "Plaintiff"), brings this action and the related Motion for Temporary Restraining Order and Preliminary Injunction against Peter Miller ("Miller") and his law firm, Miller DellaFera, PLC ("Miller DellaFera") and alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action to stop the Defendants' illegal solicitation of clients that Plaintiff represents directly, as well as clients that Plaintiff represents as co-counsel with other law firms.

1

2.      The Defendants' solicitations are causing confusion for Plaintiff's clients and are being sent by the Defendants solely as a result of the fact that Miller rejected an offer made by Banner, and its managing partner Cary McDonald ("McDonald"), regarding the sharing of fees and expenses between Plaintiff and Defendants on cases they would jointly litigate.

3.      Following Miller's rejection of the offer, he tendered his withdrawal from Banner, in which he held an interest as a non-lawyer partner.

4.      Following Miller's rejection of the offer, and his withdrawal from Banner, Miller began a campaign to solicit Plaintiff's clients, and the clients that Plaintiff represents with other law firms, in violation of the applicable Rules of Professional Conduct and in violation of Miller's fiduciary duties to Banner.

5.      Given the financial strains placed on Miller following his rejection of the offer, and given his realization that he had access to confidential client information of Banner – including its entire database of client information that included cases in which Miller had no prior role or responsibility – Miller began, and is continuing, a course of conduct to confuse Banner's clients and attempt to convince them to leave Banner and go with him to his firm, Miller DellaFera.

6.      In furtherance of this plan, Miller unilaterally sent false and misleading letters and made telephone calls to Banner's clients, and to clients on cases where Banner serves as co-counsel to other firms, on or before April 10, 2018, and continues to do so today.

7.      Although Miller represented to Plaintiff that he would provide drafts of the letters he intended to send before sending them, and that Plaintiff would be entitled to comment and agree to the language in the letters, Miller commenced mailing the false, misleading, and

unethical letters to the clients at some time on or before April 10, 2018, and continues to do so today.

8.      The letters advised the clients – many of whom had no prior direct relationship with Miller – that he was leaving Banner and that the clients had to choose whether they want to be represented by Miller or whether they would like to continue to be represented by Plaintiff.

9.      Miller has also admitted to subsequently making phone calls to clients as a follow-up to the letters, requesting that they indicate on the letters that they would like Miller to represent them in the future as opposed to Banner.

10.     Following the receipt of Miller's rejection of the offer from Banner and its managing partner McDonald regarding the sharing of fees and costs, and given Miller insistence that a communication regarding his leaving Banner would have to be sent to clients of Miller and other firms with whom Plaintiff has co-counsel relationships, on April 2, 2018, Banner requested an ethics opinion regarding Plaintiff's and Miller's responsibilities in terms of advising the clients of Miller's decision to withdraw from Banner.

11.     On April 7, 2018, Jack Marshall, Esquire ("Marshall"), an expert on the Rules of Professional Conduct in the District of Columbia, provided his first report regarding Miller's obligations regarding communicating to Banner's clients the fact that Miller had withdrawn from Banner.   On April 8, 2018, Marshall provided a supplemental report regarding the parties' duties regarding communications to Banner's clients regarding Miller's withdrawal from Banner.

12.     Despite the opinions offered by Marshall stating unequivocally that as a non-lawyer partner, there *was no obligation to advise clients of Miller's withdrawal from Banner*, Miller continues to this day to make improper and illegal communications with the Plaintiff's

clients in an attempt to persuade them to sign misleading letters indicating their desire to terminate their relationship with Plaintiff.

13.     Simply put, there was no need for Miller to communicate anything to the clients to whom he has communicated.  Either (1) the clients were already represented by Miller through Miller DellaFera and did not need any notification regarding Miller's leaving Banner; or (2) Miller did not represent the clients and, therefore, any communication to the clients he did not represent was nothing more than an improper solicitation of clients, at best, or an intentional interference with the contractual attorney-client relationship that already existed between the clients and their other counsel including Banner, at worst.

14.     The Defendants' communications to Plaintiff's clients constitute a breach of Miller's fiduciary duties to Banner, a breach of the Rules of Professional Conduct, and tortious interference with Banner's contractual relationships with the clients.  Accordingly, Plaintiffs bring this action for injunctive relief against Defendants and for damages against Miller.

## THE PARTIES

15.     Miller Legal, LLP, d/b/a Banner Legal, is a District of Columbia limited liability partnership with a business address at 700 12th St NW Suite 700, Washington, DC 20005. Banner is a citizen of the District of Columbia.

16.     Defendant, Peter Miller, is an attorney licensed by the Commonwealth of Virginia.  His business address is PMB 404, 3420 Pump Road, Henrico, VA 23233-1111.  Miller is a citizen of the State of California with a residential address at 325 S Sierra Ave. #29 Solana Beach, CA 92075.  Miller is not licensed to practice law in the District of Columbia.

17. Defendant, Miller DellaFera PLC, is a Virginia professional limited liability company with a business address at PMB 404, 3420 Pump Road, Henrico, VA 23233-1111. Miller DellaFera is a resident of Virginia.

## JURISDICTION AND VENUE

18. This Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the Parties, and the amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs.

19. The Court has personal jurisdiction over Defendants because this action arises from Defendants' (1) transaction of business in the Distirct of Columbia; (2) actions causing tortious injury in the District of Columbia; and/or (3) derivation of substantial revenue from services rendered in the District of Columbia.

20. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to claims herein occurred within this district. Further, the parties agreed to submit to the jurisdiction of this Court for any disputes arising from their business agreements.

## FACTUAL BACKGROUND

21. Starting in February 2018, Jeremy Shafer ("Shafer"), McDonald's partner in Banner and an attorney who is licensed to practice law in Washington, DC, began meetings with Miller to discuss the debts that Miller owed to Banner, as well as to McDonald personally.

22. For the past three (3) years, McDonald had funded Banner, as well as made loans to Miller for use by Miller DellaFera.[1]

---

[1] McDonald, a non-lawyer, is allowed to be a member of Banner pursuant to Rule 5.4 of the District of Columbia's Rules of Professional Conduct.

23.     Throughout the relevant time, Miller has been a non-lawyer partner in Banner and the owner of his law firm, Miller DellaFera.[2]

24.     Throughout the relevant time, Miller has never entered his appearance as counsel for a client on behalf of Banner.  Rather, he has only entered his appearance as counsel for clients under Miller DellaFera.

25.     Despite multiple meetings between Shafer and Miller in February and March 2018, the parties were unable to come to an agreement.

26.     Unsatisfied with the terms that were offered by McDonald and Banner, on March 28, 2018, Miller wrote in an email to Shafer that he would instead simply withdraw from Banner and work exclusively as an attorney through his other law firm, Miller DellaFera.

27.     Included in this March 28, 2018, email to Shafer, Miller advised that he intended to start sending out letters to clients of Banner that he was leaving Banner on April 15, 2018.

28.     On March 30, 2018, Shafer wrote to Miller and advised him that he had no ethical duty to advise clients that he was leaving Banner.  In that communication, Shafer, on behalf of Banner, specifically advised Miller to cease and desist from contacting any of Banner's clients.

29.     On April 1, 2018, Miller wrote in an email to Shafer that Miller was required to advise clients of Banner than he had withdrawn from Banner pursuant to District of Columbia Bar Ethics Opinion 273 regarding Ethical Considerations of Lawyers Moving From One Private Law Firm to Another.

30.     Miller's April 1, 2018, email further advised Shafer that he had obtained a back-up copy of Banner's client management software, known as "Case Tracker," which contains all

---

[2] Although Miller is an attorney, he was a non-lawyer partner in Banner because he is not licensed to practice law in the District of Columbia.  *See infra* ¶ 39.

of Banner's clients' contact information, as well as confidential information regarding Banner's

clients.

31.     This email also advised Shafer that Miller intended to send out letters to Banner's

clients on April 9, 2018 – a week earlier than Miller had stated on March 28, 2018.

32.     On that same day, April 1, 2018, Shafer again advised Miller that Miller was

incorrect as to his obligations or abilities to contact Banner's clients, and stated that Banner

would be contacting Marshall to obtain an opinion as to whether it was necessary to advise

clients that Miller was leaving Banner and, if so, the proper method of doing so.

33.     On April 7, 2018, Marshall provided his first of two written opinions to Shafer

regarding Miller's obligations, if any, to contact Banner's clients regarding Miller decision to

withdraw from Banner.

34.     In this first opinion letter, Marshall advised Shafter that Miller appeared to be

forcing the issue and timing as to when clients of Banner and Miller DellaFera should be advised

of Miller's withdrawal from Banner, and that such rushing was unnecessary and was being used

by Miller as a way of obtaining leverage over the business dispute between Miller and

McDonald.

35.     Marshall advised that Miller's actions were likely in violation of Rule 1.6 of the

District of Columbia Rules of Professional Conduct, which provides that a lawyer "shall not

knowingly use a confidence or secret of the lawyer's client for the advantage of a lawyer or of a

third person."

36.     More specifically, Marshall opined that Miller was using confidential client

information in an attempt to force a resolution of his business dispute with McDonald.

37.     On April 8, 2018, Marshall issued his second opinion regarding Miller's threatened contact with Banner's client.  Marshall's second opinion detailed Banner and Miller's respective obligations to advise clients of Miller's withdrawal from Banner under the specific requirements applicable to a law firm established pursuant to Rule 5.4 of the District of Columbia's Rules of Professional Conduct.

38.     Under Rule 5.4(b), a law firm in the District of Columbia may include as an owner any non-lawyer who performs professional services that assist the firm in providing legal services to clients if certain requirements are met.  Banner is a firm organized in compliance with Rule 5.4 and includes McDonald as the managing partner.

39.     Marshall's second opinion provided that, because Miller is not licensed in the District of Columbia, he is deemed a non-lawyer partner in Banner.  As a non-lawyer partner in Banner, Miller was not a lawyer practicing in the District of Columbia and was not a lawyer moving from one firm to another firm.  As such, the District of Columbia Bar Ethics Opinion 273 regarding Ethical Considerations of Lawyers Moving From One Private Law Firm to Another was not applicable.

40.     On April 8, 2018, Shafer forwarded to Miller the two opinions written by Marshall and again advised Miller that, if he sent letters to Banner's clients as threatened on April 9, 2018, Miller would be in violation of his ethical duties under the District of Columbia's Rules of Professional Conduct.  Shafer concluded by suggesting that he and Miller meet on April 16, 2018, to discuss the matter in detail.

41.     On April 10, 2018, Miller responded to Shafer stating his disagreement with Marshall's opinions.  Shockingly, in violation of promises he made on April 1, 2018, not to

communicate with Banner's clients until April 9, 2018, Miller admitted that he had already reached out to almost 10% of Banner's clients, which amounts to several hundred clients.

42.     Later in the day on April 10, 2018, Banner received its first communication from a confused client – Ms. Devon Pinckney – who had received a letter from Miller regarding his departure from Banner.  The letter from Miller and Miller DellaFera was dated April 6, 2018, and postmarked on April 7, 2018.  A true and correct copy of the letter and envelop is attached as Exhibit A.

43.     After receipt of the letter sent by Miller to Banner's client, Ms. Pinckney, Shafer sent an email to both Miller and the law firm, Gacovino, Lake & Associates, P.C. ("Gacovino & Lake"), the law firm that is co-counsel with Banner on the representation of Ms. Pinckney.  In the email, Shafer advised Miller that his letter was creating confusion among the firm's clients and demanded that the letter campaign stop.  He also requested a "detailed list of clients who were contacted and a copy of what was sent to each client (inclusive of all pertinent contact information for each client)."

44.     In response, rather than provide Shafer with the requested information, Miller responded directly to Steve Gacovino and provided a list of the clients jointly represented by Banner and Gacovino & Lake to whom Miller had sent unilateral solicitation letters.  The reason for doing so was obvious – Miller was attempting to maintain any relationship he had with Gacovino & Lake and was cooperating with them but not with Banner.

**DECLARATION OF STEVE GACOVINO, ESQUIRE**

45.     Attached as Exhibit B is the Declaration of Steve Gacovino, Esquire, one of the members of Gacovino & Lake.

46.     In his Declaration, Gacovino confirms that he only met Miller by way of an introduction from McDonald.  *Id*. at ¶ 5.

47.     Gacovino's firm has not had any business or co-counsel relationships with Miller or his firm Miller DellaFera.  *Id*. at ¶ 7.

48.     Gacovino's firm has intended for every referral it makes to go to a firm with the majority ownership belonging to McDonald – which is Banner in this instance.  *Id*.

49.     Gacovino's declaration states that Miller has accessed Gacovino & Lake's confidential information maintained by Banner without Gacovino's consent.  *Id*. at ¶ 8.

50.     Gacovino's declaration states that Miller has even attempted to solicit, by personal telephone call, one of Gacovino's family members – Analisa Sorice – and asked her to retain the services of Miller DellaFera despite the fact that she is currently represented by Banner and Gacovino & Lake – not Miller or Miller DellaFera.  *Id*. at ¶ 9.

51.     Gacovino states that he has learned that Miller and Miller DellaFera are sending letters and emails, and calling hundreds of other Gacovino & Lake clients in several mass tort actions in an attempt to remove Banner and Gacovino & Lake from the representations, and to disrupt and destroy the contractual relationships between Banner, Gacovino & Lake, and their clients.  *Id*. at ¶ 10.

52.     Gacovino concludes his declaration by stating that Miller and Miller DellaFera refuse to return Gacovino & Lake's files in their possession and that the Defendants will continue contacting and soliciting Gacovino & Lake's clients.  *Id*. at ¶ 13.

### DECLARATION OF JAMES W. FLOOD III, ESQUIRE

53.     Attached as Exhibit C is the Declaration of James W. Flood, III, Esquire ("Flood").

54.     Flood is partners with McDonald in the firm Flood Law Group, LLP ("Flood Law Group").  *Id*. at ¶ 2.

55.     Flood only meet Miller by way of introduction from McDonald approximately five (5) years ago and has known McDonald for over 30 years.  *Id*. at ¶ 4, 5.

56.     Miller has never been a member of Flood Law Group. *Id*. at ¶ 6.  Flood further states that he has been advised that Miller and Miller DellaFera have accessed the sensitive and privileged client files of Flood Law Group in the possession of Banner.  *Id*. at ¶ 7.

57.     According to Flood, neither Miller nor Miller DellaFera has performed any work on cases involving Flood Law Group clients, and Miller and Miller DellaFera have no contractual relationship with Flood Law Group. *Id*. at ¶ 8.

58.     Finally, Flood states that McDonald's and Shafer's requests to have the information returned from Miller and Miller DellaFera have been ignored, and that Miller and Miller DellaFera have indicated that they will be unilaterally contacting and soliciting Flood Law Group's clients.  *Id*. at ¶ 9-10.

## DECLARATION OF MICHAEL DICKS, ESQUIRE

59.      Attached as Exhibit D is the Declaration of Michael Dicks, Esquire, ("Dicks").

60.     Dicks is a partner in the law firm Dicks & Coglianese.  *Id*. at ¶ 2.

61.     Dicks has known McDonald for over ten (10) years.  *Id*. at ¶ 4.  Dicks has known Miller, by way of introduction from McDonald, for approximately three (3) years.  *Id*. at ¶ 5.

62.     Dicks states that neither he, nor his law firm, has ever entered into any agreements with Miller or Miller DellaFera.  *Id*. at ¶ 6.

63.     Dicks further states that neither he nor his law firm jointly represent any clients with Miller or Miller DellaFera.  *Id*. at ¶ 7.

64.     Dicks further states that he has been informed that Miller has accessed sensitive and privileged filed of clients of Dicks & Coglianese.  *Id*. at ¶ 8.

65.     Dicks has also been advised that Miller has threatened to contact clients of Dicks & Coglianese.  *Id*. at ¶ 9.

66.     Dicks states that neither Miller nor Miller DellaFera has done any work in cases with Dicks & Coglianese, and that neither Miller nor Miller DellaFera has any claim to any fees generated in those cases.  *Id*. at ¶ 9.

67.     Dicks concludes by stating that McDonald and Shafter have made demands to Miller to cease communications with clients of Dicks & Coglianese and to return all of Dicks & Coglianese's clients files but Miller refuses to do so.  *Id*. at ¶ 10 - 11.

## DECLARATON OF VON DRASEK

68.     Attached as Exhibit E is the Declaration of Von Drasek ("Drasek").

69.     Drasek is employed by Banner as a campaign case manager and has been employed by Banner since its creation.  *Id*. at ¶ 1-2.

70.     Draske's focus has been on litigation involving the Mirena intrauterine device ("IUD"), a birth control product, and clients who have been diagnosed with pseudotumor cerebri. *Id*. at ¶ 3.  Those cases are referred to as Mirena PTC.  *Id*.

71.     Drasek has worked closely with the staff of Miller DellaFera in cases where Banner and Miller DellaFera jointly represent clients as co-counsel.  *Id*. at ¶ 4.  In fact, she has worked on every Mirena PTC case involving a plaintiff that either Banner and/or Miller DellaFera represents.  *Id*. at ¶ 5.

72.     On April 10, 2018, Drasek received a phone call from Banner's client, Pinckney, described above in Paragraph 40.  *Id*. at ¶ 6.

12

73.     As of the day that Drasek received the call from Pinckney, her Mirena PTC complaint had already been filed by Miller DellaFera and Banner had already been ordering and reviewing medical records and handling all communications with Pinckney.  *Id*. at ¶ 7.  At that time, Banner and Miller DellaFera had been representing Pinckney jointly.  *Id*.

74.     Since the first call from Pinckney, Drasek has received calls from almost forty (40) additional Mirena PTC clients and each of them expressed confusion as to the purpose of Miller's letters.  *Id*. at ¶ 8.

75.     Each of the clients who called in response to a letter from the Defendants has asked Drasek why they needed to sign it and had concerns about the letter given that they had had a close working relationship and regular communications with Drasek.  *Id*. at ¶ 8.

76.     Attached to the Drasek Declaration as Exhibit A is a true and correct copy of the letter sent by the Defendants to Pinckney that Pinckney forwarded to Drasek.

77.     Attached to Drasek's Declaration as Exhibit B is a spreadsheet showing the Mirena PTC clients who have contacted Drasek about Miller's letter.  *Id*.

78.     Attached to Drasek's Declaration as Exhibit C is a copy of one of the letters that Miller sent to the Mirena PTC clients.  *Id*. at ¶ 9.

79.     As is clear on the face of the letter, Miller's letter gave the Mirena PTC clients only one choice – to retain Miller DellaFera.  *Id*.  To be clear, each of the clients who have been solicited by Miller and Miller DellaFera (listed on Exhibit B) – as well as additional, yet to be determined clients who have been solicited by Miller and Miller DellaFera – were at all times represented by both Banner and Miller DellaFera.  Given that the clients were already represented by both Banner and Miller DellaFera, the fact that Miller has left Banner has

absolutely no effect on the status of the clients' representation.  Attached as Exhibit F, are two engagement letters in which both Banner and Miller DellaFera are listed as counsel.

80.     In addition, Drasek has been advised by Banner's clients that Miller has left several voicemail messages to Mirena PTC clients.  *Id*. at ¶ 10.

81.     Drasek has heard several of the voicemail messages and Miller stated that Banner was dissolving its partnership and that Miller had an ethical duty to contact them and ask whether they wanted to have Shafer or Miller represent them.  *Id*. at ¶ 10.  These statements by Miller were false.

82.     One of the Mirena PTC clients who received a call from Miller was the niece of Gacovino who has a twenty (20) year relationship with McDonald and to whom Gacovino has referred hundreds of cases to Banner.  *Id*. at ¶ 11.

83.     Finally, Drasek states that, in all of the cases on which he has worked, Miller filed not a single case on behalf of Banner, but rather, always as Miller DellaFera.  *Id*. at ¶ 12.

84.     Given that Miller has only ever entered his appearance on behalf of clients as a member of Miller DellaFera, the fact that he has withdrawn from Banner does not require any notification to the clients.

85.     Miller's withdrawal from Banner does not change any of the duties Banner owes to the jointly-represented clients, nor does his withdrawal from Banner change any of the duties Miller and Miller DellaFera owed to the clients.  Rather, the letters and phone calls from Miller and Miller DellaFera are simply an attempt by the Defendants to improperly interfere with the contractual relationship between Banner and its clients, as well as the co-counsel relationships between Banner and its co-counsel partners including, but not limited to, Gacovino & Lake, Flood Law Group, and Dicks & Coglianese.

## COUNT I
## REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION
### (Against all Defendants)

86.     Plaintiff incorporates by reference all of the preceding paragraphs as if set forth at

length herein.

87.     To obtain a temporary restraining order and/or a preliminary injunction, a plaintiff

must clearly demonstrate: (a) a substantial likelihood of success on the merits; (b) that it would

suffer irreparable injury if the injunction was not granted; (c) that an injunction would not

substantially injure other interested parties; and (d) that the public interest would be further by

the requested injunction.  *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Hall v. Johnson*, 599 F. Supp.

2d 1, 3 n.2 (D.D.C. 2009) ("The same standard applies to both temporary restraining orders and

to preliminary injunctions.").

### (a)     Banner Has a Substantial Likelihood of Success on the Merits.

88.     Banner has a substantial likelihood of success on the merits of its claims.  Based

upon the expert opinions of Marshall, there was no legitimate basis for the Defendants to seek to

convince Banner's clients to terminate their engagement.

89.     Defendants only attempted to convince Banner's clients to abandon Banner as

their law firm in order to cause financial harm to Banner.  The Defendants' actions create

liability for them under a claim of interference with contract or business expectancy.

90.     Miller owed significant amounts of money to McDonald due to McDonald's

funding of Miller DellaFera since its inception.  Miller rejected all of McDonald's offers, made

through Shafer, to resolve disputes relating to McDonald's loans.  Instead, Miller opted to

withdraw from Banner and sought to interfere with Banner's contractual relationships with its clients and its co-counsel.

91.     The Defendants' actions create liability under a claim for interference with contract or business expectancy.

**(b)     BannerWill Suffer Irreparable Harm Without Injunctive Relief.**

92.     If the Defendants are not enjoined from improperly contacting Banner's clients and soliciting them to terminate their engagements with Banner and Banner's co-counsel partners, Banner will suffer irreparable harm that cannot be compensated by the payment of money damages.

93.     First, without an injunction barring Defendants' improper solicitation of its clients, as well as the clients of its co-counsel firm, Banner's reputation among its co-counsel firms will likely be irreparably harmed and it may not be able to secure joint representations in cases moving forward.  Banner's legal practice is devoted exclusively to mass torts.  The world of mass torts is small, and a firm's reputation is one of its most valuable assets.  If the Defendants are allowed to continue to access and use information on Banner's Case Tracker to the detriment of Banner's co-counsel, Banner's reputation will be irreparably harmed.

94.     Second, the Defendants' actions are creating liability under the District of Columbia's Rules of Professional Conduct for Banner and its only attorney member, Shafer.  As the only attorney member of Banner, under Rule 5.4 of the Rules of Professional Conduct, Shafer is responsible for the supervision of all non-lawyer personnel which includes Miller.  Therefore, Banner and Shafer are obligated to seek the Court's intervention in this matter given that all prior attempts to stop the Defendants have proven useless.

95.     Third, Banner's clients are being harmed due to the uncertainty being created by the Defendants' false and misleading communications that are designed to confuse the clients and convince them to sever their long-standing relationships with Banner and Banner's co-counsel.

**(c)     An Injunction Would Not Substantially Injure Defendants.**

96.     Enjoining the Defendants from continuing to send misleading and tortious communications to Banner's clients would not substantially injure Defendants.

97.     As alleged in Paragraph 13, the withdrawal of Miller from Banner has absolutely no effect on his representation of any client.  Given that at no relevant time did Miller enter his appearance on behalf of a client through Banner – always through Miller DellaFera – there is no need for Miller to communicate to his clients that he has left a firm from which he has never even entered his appearance.

98.     Moreover, enjoining the Defendants from soliciting clients that they do not currently represent will not create any injury for the Defendants.  In fact, it will actually prevent them from engaging in conduct that is prohibited by the applicable Rules of Professional Conduct – thus preventing further self-inflicted injury to the Defendants.

**(d)     The Public Interest Would Be Furthered by an Injunction.**

99.     Finally, the public interest would be furthered by the entry of an injunction.  An injunction would protect the public generally, and the clients of Banner specifically, from receiving false and misleading communications from Defendants and would alleviate the confusion and concern already expressed by the clients who have contacted Banner in response to the Defendants' communications.

100.    In addition, to the extent that any client terminates its engagement of Banner as a result of the Defendants' false and misleading communications, the Courts would be burdened by an increase in litigation over the claims for *quantum meruit* and other claims by Banner and its co-counsel firms as a result of the early termination of Banner's and its co-counsels' representation of the clients.

**WHEREFORE**, for the foregoing reasons, Banner respectfully requests that a Temporary Restraining Order and a Preliminary Injunction be issued against Defendants, Peter Miller, Esquire, and Miller DellaFera, PLC, enjoining them from contacting any clients of Plaintiff in an effort to convince the clients to terminate their relationship with Plaintiff or with any law firm with which Plaintiff has a co-counsel relationship.

**COUNT II**
**INTERFERENCE WITH CONTRACT**
**(Against all Defendants)**

101.    Banner incorporates by reference all of the preceding paragraphs as if set forth fully herein.

102.    Banner has valid and enforceable contracts with its clients in the form of engagement letters.

103.    Banner has valid and enforceable contracts with its co-counsel firms in the form of co-counsel agreements.

104.    The Defendants know of both Banner's engagement letters with its clients and Banner's co-counsel agreements with it co-counsel firms.

105.    The Defendants intentionally interfered with Banner's engagements with its clients by sending false and misleading communications intended to convince or trick Banner's clients into terminating their relationship with Banner.

106.     The Defendants intentionally interfered with Banner's co-counsel relationships by taking copies of the Case Tracker databases that contained the confidential information of clients of the firms that co-counsel with Banner including, but not limited to, Flood Law Group, Gacovino & Lake and Dicks & Coglianese, among others.  By taking this information and not returning it to Banner, the Defendants are intending to harm Banner's relationship with its co-counsel partners at a minimum and to otherwise interfere with Banner's ability to perform its obligations to its co-counsel firms.

107.     Banner has suffered damages as a result of the Defendants' actions to interfere with its contract.  Banner knows of at least one client who signed the Defendants' letter indicating (Banner believes mistakenly) their intent to leave Banner.  The costs expended by Banner in the case in which the client has purportedly terminated its relationship with Banner exceed $75,000 and the fees to be earned on that case will likely exceed $75,000.

108.     In addition, Banner's staff has had to spend significant amounts of time responding to the confusion caused by the Defendants' false and misleading communications to its clients.

**WHEREFORE**, Banner demands judgment against Defendants for damages in an amount in excess of $75,000 to be determined at trial, together with punitive damages, interest, taxable costs, and any other amounts or remedies this Court deems just and proper.

## COUNT III
## BREACH OF FIDUCIARY DUTY
### (Against Peter Miller)

109.     Banner incorporates by reference all of the preceding paragraphs as if set forth fully herein.

110.    Given that Miller was a non-lawyer partner in Banner and was entrusted with access of Banner's clients and its clients' confidential information and confidential information that was provided by Banner's co-counsel partners, Miller owed fiduciary duties to Banner.

111.    Miller's actions to provide false and misleading information to Banner's clients were intended to mislead or trick Banner's clients into terminating their attorney-client relationships with Banner, and constituted a breach of Miller's fiduciary duties to Banner.

112.    As a direct and proximate cause of Miller's breach of his fiduciary duties to Banner, Banner suffered damages in an amount in excess of $75,000 to be determined at trial.

**WHEREFORE**, Banner demands judgment against Defendant, Peter Miller, for damages in an amount in excess of $75,000 to be determined at trial, together with punitive damages, interest, taxable costs, and any other amounts or remedies this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury pursuant to the Federal Rules of Civil Procedure on all issues so triable.

Dated:  April 30, 2018                    Respectfully submitted,

/s/ Kierstan L. Carlson

Kierstan L. Carlson (DC Bar No. 1005383)
BLANK ROME LLP
1825 Eye Street, N.W.
Washington, DC  20006-5403
Tel:  (202) 420-2200
Fax: (202) 420-2201
carlson@blankrome.com

Mark L. Rhoades (*pro hac vice admission pending*)
RHOADES LLC
1528 Walnut Street
Suite 1650
Philadelphia, PA 19102
Tel: (215) 496-9002
Fax:  (215) 893-3960
mrhoades@rhoadesllc.com

*Counsel for Plaintiff, Miller Legal, LLP, d/b/a
Banner Legal*

## **VERIFICATION**

On behalf of Plaintiff, Miller Legal, LLP, d/b/a Banner Legal, I, Jeremy Shafer, Esq., have reviewed the allegations of the foregoing Verified Complaint for Temporary Restraining Order and Preliminary Injunction Pursuant to Rule 65 of the Federal Rules of Civil Procedure, and hereby declare under penalty of perjury that the foregoing statements of fact contained therein are true and correct.

Executed on April 30, 2018                     _____
                                                Jeremy Shafer, Esq.