UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| Miller Legal, LLP, d/b/a Banner Legal, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-1007 (RC) |
| | : | | |
| v. | : | Re Document No.: | 23 |
| | : | | |
| Peter Miller and Miller DellaFera, PLC, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING MOTION TO COMPEL ARBITRATION AND DISMISS COUNTERCLAIM

### I. INTRODUCTION

Currently before the Court is Plaintiff's motion to dismiss Defendants' counterclaim and compel arbitration. *See* ECF No. 23. This motion arises from a dispute among attorneys moving among firms. Plaintiff alleges interference with contract by all Defendants and breach of fiduciary duty by Defendant Peter Miller. Despite several attempts to resolve their differences via private mediation, the parties have been unable to reach a settlement agreement on all of the underlying issues. On November 5, 2018, Defendants filled an answer and asserted a counterclaim for breach of contract. *See* Defs.' Answer and Countercl. ("Defs.' Answer"), ECF No. 20. Plaintiff now moves to dismiss Defendants' counterclaim and compel arbitration, contending that the instant dispute is controlled by an arbitration clause contained in the Banner Legal Partnership Agreement. *See* Pl.'s Mot. Dismiss and Compel Arbitration ("Pl.'s Mot. Compel") ¶¶ 21–23, 29–31, ECF No. 23. Because this Court concludes that Plaintiff's litigation conduct has waived the right to invoke arbitration, it will deny Plaintiff's motion.

## II. BACKGROUND

Plaintiff Miller Legal, LLP, d/b/a Banner Legal ("Banner Legal") is a law firm based in Washington, D.C. Banner Legal is led by managing partner Cary McDonald, Compl. ¶¶ 2, 15, ECF No. 1, a non-lawyer who operates alongside the firm's other partner, D.C.-licensed attorney Jeremy Shafer, *id.* ¶ 21. As of September 2017, in addition to these two partners, the firm included six other "Profit Share Members." *See* Pl.'s Mot. Compel, Ex. A, ECF No. 23-2. Defendants are, respectively, an individual attorney, Mr. Miller, and another law firm with which Mr. Miller is associated, Miller DellaFera, PLC ("Miller DellaFera"). Mr. Miller's relationship with Banner Legal soured in early 2018, leading Mr. Miller to declare his intention to leave the firm via an email sent on March 28, 2018. *See* Compl. ¶ 26; Defs.' Answer ¶ 26.

The parties dispute the reason for Mr. Miller's departure from Banner Legal. According to Plaintiff's Complaint, Mr. McDonald had funded Banner Legal and lent money to Mr. Miller for use by Miller DellaFera, PLC ("Miller DellaFera") since 2015. Compl. ¶ 22. Plaintiff contends that Mr. Miller departed the firm because he was unable to "come to an agreement" with Mr. Shafer regarding the settlement of debts that Mr. Miller owed to Banner Legal and to Mr. McDonald. *See id.* ¶¶ 21–25. Defendants describe the events differently, asserting that Mr. Shafer and Mr. McDonald forced Mr. Miller out of the partnership through a series of actions taken in fall 2017 and early 2018. *See* Defs.' Opp'n TRO 6–7, ECF No. 11. Defendants proffer that Mr. Shafer and Mr. McDonald narrowed Mr. Miller's involvement in the firm by redefining his role from "Partner" to "Profit Share Member." *Id.* at 6. Defendants further aver that Mr. McDonald "refused to honor the co-counsel agreement between [Banner] Legal and Miller DellaFera," *id.*, and under which "[Banner] Legal financed Miller DellaFera's overhead, payroll, litigation and operating expenses" from October 2014 to May 2017, Defs.' Countercl. ¶ 15.

After his departure from Banner Legal, Mr. Miller sent letters to clients whom he had represented during his tenure as a litigator at Banner Legal. *See* Compl. ¶¶ 6–14 (alleging improper and unethical communication with clients); Defs.' Answer ¶¶ 7–8 (discussing letters and arguing that Mr. Miller was professionally obligated to update clients).[1]

On April 30, 2018, Banner Legal initiated this suit against Mr. Miller and Miller DellaFera. *See generally* Compl. Plaintiff's complaint alleged interference with contract by both Defendants and breach of fiduciary duty by Defendant Mr. Miller and sought a temporary restraining order and preliminary injunction. *Id.* After this Court denied Plaintiff's request for a temporary restraining order, *see* May 3, 2018 Minute Order, and before the scheduled hearing on Plaintiff's request for a preliminary injunction, the parties agreed to private mediation to attempt to resolve their dispute, *see* June 8, 2018 Minute Order. On July 17, 2018, the parties reported that they had reached a signed settlement agreement on some of the claims and issues and agreed to meet with the private mediator later in the summer to attempt to settle the remaining disputes. *See* Joint Status Report Regarding Mediation at 1, ECF No. 16. But further mediation did not resolve the case.

On November 5, 2018, Defendants filed an answer to Plaintiff's complaint along with a series of counterclaims. *See* Defs.' Answer. Plaintiff responded with a motion to dismiss Defendants' counterclaim for breach of contract and compel arbitration based on the terms of the Banner Legal "Limited Liability Partnership Agreement" ("Partnership Agreement"), which was operative during approximately two years of Mr. Miller's tenure at Banner Legal.[2] *See* Pl.'s

---

[1] The Court notes these letters to provide factual background for Plaintiff's motion to compel arbitration, yet takes no position on the merits of parties' contentions regarding the letters.

[2] The Partnership Agreement took effect on February 5, 2016, *see* Pl. Mot. Compel 1, Ex. B, ECF No. 23-3, and Mr. Miller departed in early 2018, *see* Defs.' Countercl. ¶¶ 7, 19.

3

Mot. Dismiss Countercl., Ex. A. This Partnership Agreement contains an arbitration provision stipulating that "any claim or controversy arising out of or relating to this Agreement, or a breach of it, shall, upon the request of any party involved, be submitted to and settled by arbitration." *Id.* at 10. The original Partnership Agreement was amended on September 13, 2017, with the "First Amendment to the Limited Liability Partnership Agreement" ("First Amendment to the Partnership Agreement"). *See id.* at Ex. B. This document reaffirmed the original agreement, except as "expressly modified." *Id.* at ¶ 7. The First Amendment to the Partnership Agreement did not expressly modify the arbitration clause.[3]

Defendants contest the arbitrability of their counterclaims, which they argue arise out of a different document, the "Agreement Between Miller Legal, LLP, Miller DellaFera PLC, and Peter A. Miller Concerning the Funding of Miller DellaFera PLC," which Defendants refer to as the "Co-Counsel Agreement."[4] Defs.' Opp'n Mot. TRO, Ex. B, ECF No. 11-3. The undated, unsigned Co-Counsel Agreement provides that "[Banner Legal] agrees to fully finance [Miller DellaFera's] overhead, payroll, litigation, and operating expenses in conjunction with the litigation of Mass Tort Cases" and lays out terms of repayment. *Id.* at 2. Defendants allege that the parties began operating under an oral version of this same agreement in July 2014 and reduced it to writing in 2016. *See* Defs' Countercl. ¶ 13; Defs.' Opp'n Mot. Compel Arbitration and Mot. to Dismiss 2 ("Defs.' Opp'n Mot. Compel"), ECF No. 25. Defendants further argue that the counterclaims are not properly subject to arbitration because Defendant Miller DellaFera

---

[3] The First Amendment to the Partnership Agreement mentions arbitration, but only to affirm that "[t]he Partners submit to the jurisdiction of the courts of the District of Columbia for the enforcement of this Amendment or any arbitration award or decision arising from th[e] Amendment." Pl.'s Mot. Dismiss Countercl., Ex. B ¶ 6.

[4] Although the Court adopts Defendants' term for expositional consistency, this document primarily addresses funding and repayment—not co-counsel matters in general.

4

was not a signatory to the Partnership Agreement and hence is not bound by its arbitration clause. *See* Defs.' Opp'n Mot. Compel 3–4. Plaintiff contests this version of events, contending that the unsigned Co-Counsel Agreement is not binding and does not "repudiate the [Partnership Agreement's] arbitration clause." Pl.'s Mot. Compel ¶ 35. This matter is ripe for the Court's consideration.

## III. LEGAL STANDARD

The D.C. Circuit has established that a district court is to examine a motion to compel arbitration under "the summary judgment standard of Federal Rule of Civil Procedure 56(c), as if it were a request for 'summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (quoting *Aliron Int'l, Inc.,* 2006 WL 1793295, at *1 (internal citations omitted) (D. D.C. June 28, 2006) (citing *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir. 2003)). Applying this standard, "summary judgment is appropriate only if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c))).

## IV. ANALYSIS

### A. Arbitrability

Before the Court addresses the merits of Plaintiff's motion to compel arbitration, it must address an antecedent issue: arbitrability, or whether the suit is properly subject to arbitration. Because Defendants do not dispute the existence of a valid and binding arbitration clause, but rather contest the reach of that clause, the Court assumes *arguendo* that there is an enforceable

arbitration clause in the Partnership Agreement.[5] There remain two arbitrability sub-issues: First, who decides arbitrability, using what standards? And second, is the particular controversy or issue—Defendants' counterclaim for breach of contract—arbitrable under the terms of the arbitration clause?

On the first question, a clear line of precedent empowers this Court to determine whether the instant matter is arbitrable. Unless otherwise specified by the agreement to arbitrate, *see Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019), a deciding court and not an arbitrator is to determine the "gateway" question of whether the parties agreed to resolve disputes by arbitration, *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citing *AT&T Tech.*, *Inc. v. Commc'ns Workers*, 475 U.S. 643, 651–652 (1986)); *Atkinson v. Sinclair Ref. Co.,* 370 U.S. 238, 241–43 (1962); *see also Hossain v. JMU Prop., LLC*, 147 A.3d 816, 821 (D.C. 2016) (citation omitted).

On the second question, once a court is "satisfied that the making of the agreement for arbitration . . . is not in issue," it must not stand in the way of a valid arbitration agreement. 9 U.S.C. § 4. Rather, a court must respect the Federal Arbitration Act's status as "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). To give full effect to the Federal

---

[5] An arbitration agreement may be unenforceable "'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)) (citation omitted). Defendants do not raise any "generally applicable contract defenses" to contest the arbitration clause's validity. Because the Court concludes that Plaintiff's litigation conduct is inconsistent with the intent to arbitrate, *see infra* Section IV.B, it need not address Defendants' other arguments regarding the scope of the arbitration agreement or the identities of the signatory parties. *See* Defs.' Opp'n. Mot. Compel 2–6.

Arbitration Act and the policy evidenced therein, "courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc.*, 139 S. Ct. at 529 (citing *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 67 (2010)). Notwithstanding the "liberal federal policy favoring arbitration agreements," a court must still take care to ensure that the parties agreed to arbitrate a particular matter. *See Howsam*, 537 U.S. at 84 ("Gateway" questions for a court include "disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy").

Here, there is no dispute about the arbitration clause's existence. The plain text of the Partnership Agreement contains an arbitration clause providing that "any claim or controversy arising out of or relating to this Agreement, or a breach of it, shall, upon the request of any party involved, be submitted to and settled by arbitration." Pl.'s Mot. Compel, Ex. A. And as previously stated, Defendants do not argue that the clause is unenforceable. Defendants do contend, however, that Plaintiff has waived the right to arbitration because of its failure to timely assert that right. Because such a finding makes it unnecessary to rule on the merits of Plaintiff's motion to compel, it is to this issue that the Court next turns.

### B. Waiver of Right to Compel Arbitration

#### 1. This Court is the Proper Body to Assess Waiver

Defendants' opposition to Plaintiff's motion to compel arbitration argues that Plaintiff waived its right to demand arbitration through its litigation conduct to date. *See* Defs.' Opp'n Mot. Compel 1. Plaintiff counters that the question of waiver is properly one that should be decided by an arbitrator. *See* Pl.'s Mem. P. & A. Supporting Mot. to Dismiss Countercl. and Compel Arbitration ¶¶ 42–45 ("Pl.'s Mem. P. & A. Supporting Mot. Compel"), ECF No. 23-1. More specifically, Plaintiff invokes D.C. case law to support the proposition that, "[o]nce the

court has settled the basic contractual question, 'it is for the arbitrator to resolve other gateway matters . . . and allegations of waiver, delay, or a like defense to arbitrability." *Id.* at ¶ 43 (quoting *Hossain*, 147 A.3d at 821 (internal quotation mark omitted)).[6] In other words, Plaintiff contends that this Court may not decide the issue of waiver.

However, as Defendants note in their opposition, the same case on which Plaintiff primarily relies, *Hossain*, gives this court authority to decide the issue of waiver. As the *Hossain* Court explained, interpreting the Supreme Court's guidance in *Howsam.*, 537 U.S., "[a]n increasing number of state supreme courts and federal circuit courts have interpreted *Howsam* in a way that holds that waiver by litigation conduct is of a different nature than other waiver inquiries exclusively allocated to the arbitrator's authority." *Hossain*, 147 A.3d at 821 (internal quotation omitted); *see also id.* at 821–22 (compiling cases in support of conclusion). Moreover, other federal district courts in this Circuit have found it entirely proper to assess whether a party's litigation conduct has waived the right to compel arbitration. *See, e.g., Mitchell v. Craftworks Rests. & Breweries, Inc.*, No. CV 18-879 (RC), 2018 WL 5297815, at *11 (D.D.C. Oct. 25, 2018) (analyzing waiver of the right to arbitration); *Cho v. Mallon & McCool, LLC*, 263 F. Supp. 3d 226, 228 (D.D.C. 2017) (same); *Kelleher v. Dream Catcher, LLC*, 278 F. Supp. 3d 221, 223 (D.D.C. 2017) (considering whether party forfeited the right to arbitrate); *see also Khan*

---

[6] Plaintiff does not explain its reliance on non-binding state law authority, nor does Plaintiff's motion to compel arbitration explicitly invoke D.C. state law beyond noting similarities between the FAA and the District of Columbia's Arbitration Act, Pl.'s Mot. Compel ¶ 27, and stating that the District's Act "applies to any agreement to arbitrate made on or after February 27, 2008," *id.* at ¶ 28. Plaintiff may implicitly be attempting to invoke the background principle that a court "deciding whether the parties agreed to arbitrate a certain matter" should generally "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In any event, Plaintiff's argument is unavailing: as discussed *infra*, both federal and state law precedents permit this Court to address the question of waiver.

*v. Parsons Glob. Servs., Ltd.*, 480 F. Supp. 2d 327, 332 (D.D.C. 2007), *rev'd on other grounds,* 521 F.3d 421 (D.C. Cir. 2008) ("Because this type of determination is one concerning the arbitrability of a claim, the issue of waiver of right to arbitrate should be decided by the Court, not an arbitrator, according to federal law.").

In addition, Plaintiff fails to establish that the arbitration agreement at issue makes the question of waiver one that an arbitrator must address. The arbitration clause states that "any claim or controversy arising out of or relating to th[e] [Partnership] Agreement, or a breach of it, shall . . . be submitted to and settled by arbitration in accordance with the rules of the American Arbitration Association (or any other form of arbitration mutually acceptable to the parties involved) then obtaining in Washington, D.C." Pl.'s Mot. Compel, Ex. A. Plaintiff's motion to compel requests that the Court "require the parties to present their dispute to the American Arbitration Association ["AAA"] as required by the contracts the parties executed," Pl.'s Mot. P. & A. Supporting Mot. Compel ¶ 52, yet contains no legal argumentation regarding the AAA rules and their significance in this case. Two paragraphs at the end of Plaintiff's final pleading then contend that the arbitration agreement's reference to the AAA requires the arbitrator to "decide the scope and applicability of arbitration" in the instant case, including the question of waiver. Pl.'s Reply Supporting Mot. Compel ¶¶ 23–24, ECF No. 26. Because Plaintiff did not previously articulate this specific argument, Defendants did not have the opportunity to respond to it in their opposition. This Court will not refer the entire matter to arbitration on the thin reed of two paragraphs in a final pleading. *See Walker v. Pharm. Research & Mfrs. of Am.*, 461 F. Supp. 2d 52, 59 n.9 (D.D.C. 2006) (concluding that party who raised claim for first time in reply had waived the argument) (citing *In re Asemani,* 455 F.3d 296, 300 (D.C. Cir. 2006)) (citations omitted); *see also Bronner v. Duggan*, 249 F. Supp. 3d 27, 41 (D.D.C. 2017) (declining to

consider argument raised for first time in reply); *United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 122 n.14 (D.D.C. 2015) ("Because new arguments asserted in reply are waived, the Court declines to consider . . . [the party's] argument."). Moreover, for the reasons that follow, Plaintiff has not adequately demonstrated that the cited language in the arbitration agreement *requires* an arbitrator to determine arbitrability.

Because arbitration agreements are contractual agreements to be treated "on an equal footing with other contracts," *Rent-A-Ctr. W., Inc.*, 561 U.S. at 68 (internal citations omitted), "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed [to] about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration?" *First Options of Chi., Inc.*, 514 U.S. at 943. To answer this question, the general rule is that courts "should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62–63 & n.9 (1995); *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.,* 489 U.S. 468, 475–76 (1989); *Perry v. Thomas,* 482 U.S. 483, 492–93 & n.9 (1987); G. Wilner, 1 Domke on Commercial Arbitration § 4:04, p. 15 (rev. ed. Supp. 1993)). However, a court deciding "whether a party has agreed that arbitrators should decide arbitrability" is to apply a different standard: "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at 944 (quoting *AT&T Tech.*, 475 U.S. at 649) (internal citation omitted).

Here, the plain text of the arbitration clause does not clearly and unmistakably establish that the parties agreed to arbitrate arbitrability. The arbitration clause states that disputes are to be "settled by arbitration in accordance with the rules of the American Arbitration Association (*or any other form of arbitration mutually acceptable to the parties involved*)." Pl.'s Mot.

10

Compel, Ex. A (emphasis added). The rules, then, are not "unmistakably" stipulated by the clause itself in the way that Plaintiff argues. Rather, as the parenthetical in the clause establishes, the parties must mutually agree on the form of arbitration. And because the form that will be mutually acceptable to the parties cannot be predicted in the abstract, there is not "clear and unmistakable" evidence that the parties agreed to delegate the question of arbitrability to an arbitrator pursuant to AAA rules. Accordingly, this Court will follow the law of this Circuit and proceed to address whether Plaintiff may properly compel arbitration at this point in the law suit.

2. Plaintiff's Waiver of Right to Arbitrate

As previously discussed, Defendants contend that Plaintiff has waived the right to arbitrate. More specifically, Defendants argue that Plaintiff "has been an active participant in this litigation" and "did not seek arbitration in this matter until after Defendants brought their Counterclaim and after Defendants served Plaintiff with written Interrogatories and a Request for Production of Documents." Defs.' Opp'n Mot. Compel 6–7. Thus, Defendants argue that Plaintiff's participation in the litigation to date evinces a choice to litigate rather than arbitrate that amounts to a waiver of their right to compel arbitration now. Plaintiff proffers that there is no such waiver because trial has not begun, and "'litigation activity' short of the commencement of trial does NOT constitute a waiver." Pl.'s Reply Supporting Mot. Compel ¶ 22. For the following reasons, Defendants have the better argument.

A party "waive[s] its right to arbitration by acting 'inconsistently with the arbitration right.'" *Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 425 (D.C. Cir. 2008) (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)); *see also Mitchell*, 2018 WL 5297815 at *11. In order to determine whether a party's conduct has

11

waived the right to arbitration, a court is to conduct a "totality of the circumstances" analysis. *Khan*, 521 F.3d at 425 (quoting *Nat'l Found. for Cancer Research*, 821 F.2d at 774). This totality of the circumstances analysis may consider factors that include "whether a party timely sought arbitration" and whether the party that now seeks arbitration previously "engaged in litigation activity that induced the other party and 'the district court to expend time and effort on disputes, the resolution of which would not' move the dispute toward arbitration." *Partridge v. Am. Hosp. Mgmt. Co., LLC*, 289 F. Supp. 3d 1, 17 (D.D.C. 2017) (quoting *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 923 (D.C. Cir. 2011)). This analysis may also assess whether "the party opposing arbitration would suffer prejudice from the movant's delay in seeking arbitration," *id.*, although a finding of prejudice to the non-movant is not required to conclude that waiver has occurred, *see Khan*, 521 F.3d at 425.

Here, Defendants contend that Plaintiff waived the right to arbitrate by initiating this suit in April 2018 and then actively participating in litigation for seven months—and only then moving to compel arbitration.[7] *See* Defs.' Opp'n Mot. Compel 6. Because a totality of the circumstances test applies, the length of time between filing the complaint and Plaintiff's request to arbitrate is not itself dispositive. The Court's inquiry must ascertain whether, based on Plaintiff's overall conduct, Plaintiff acted inconsistently with the arbitration right and thereby waived the right to arbitration. *See Khan*, 521 F.3d at 425 (internal citation omitted) (discussing what constitutes waiver of right to arbitrate). For the reasons that follow, based on the totality of the circumstances, this Court concludes that Plaintiff did indeed waive the right to compel arbitration at this point in the lawsuit.

---

[7] Plaintiff filed its Complaint on April 30, 2018, *see* ECF No. 1, and submitted its motion to compel arbitration on December 10, 2018, *see* ECF No. 25. In their opposition, Defendants round this period up to eight months, but it is in fact closer to seven.

12

First, Plaintiff did not timely seek arbitration. The procedural posture of this case—a motion to compel arbitration of a counterclaim—requires close attention to the question of when Plaintiff could have moved to compel arbitration. Although the instant motion to compel arbitration refers specifically to Defendant's counterclaim for breach of contract, Plaintiff's own discussion of this counterclaim reveals that it is closely related to the claims that Plaintiff pursued in its complaint. In the very first paragraph supporting Plaintiff's motion to compel arbitration, Banner Legal asserts that "[t]he gravamen of the matter is a dispute concerning the rights to fees and expenses of litigation with respect to thousands of clients primarily involved in Multi District and/or 'mass tort' litigation." Pl.'s Mem. P. & A. Supporting Mot. Compel ¶ 1. Plaintiff proceeds to argue that the Partnership Agreement for Banner Legal "govern[ed] the relationship among the parties with respect to the allocation of fees and responsibility for the conduct of certain 'mass tort' litigation." *Id.* at ¶ 4. Plaintiff further contends that the right to compel arbitration comes from the same Partnership Agreement provision stating that "any claim or controversy arising out of or relating to this Agreement, or a breach of it, shall, upon the request of any party involved, be submitted to and settled by arbitration." *Id.* at ¶ 6. Moreover, in Banner Legal's subsequent response to Defendants' opposition to the motion to compel arbitration, Plaintiff reiterates the argument that any claim Mr. Miller makes regarding "money [owed] by Banner is a dispute squarely within [the Partnership Agreement and the First Amendment to the Partnership Agreement], and squarely subject to the arbitration clauses of the Agreements." Pl.'s Reply Supporting Mot. Compel ¶ 8.

But this argument is a double-edged sword for Banner Legal. Plaintiff argues that Defendants' breach of contract counterclaim is properly subject to arbitration because it involves questions about Mr. Miller's tenure at Banner Legal and whether he or Miller Dellafera are owed

13

funds, and this "claim or controversy aris[es] out of or relat[es] to" the Partnership Agreement. Pl.'s Mot. Compel ¶ 23. Applying this read to Plaintiff's complaint, however, Plaintiff's original claims also arise out of or relate to the Partnership Agreement. For one, Plaintiff's interference with contract claim alleges that Defendants "intentionally interfered with Banner's engagements with its clients" and "Banner's co-counsel agreements with it[s] co-counsel firms." Compl. ¶¶ 104–05. The Partnership Agreement states that "MILLER shall have complete and unequivocal control of, and veto power for, any decision relating to . . . co-counsel relationships, referrals to counsel, . . . and any and all decisions which are related to the practice of law." Pl.'s Mot. Compel., Ex A 5. Because the Partnership Agreement specifically discusses co-counsel agreements and provides Mr. Miller with authority regarding such matters, Plaintiff's claim for interference with contract necessarily relates to the Partnership Agreement. As such, Plaintiff's interference with contract claim in the complaint presents a claim that falls within the scope of the arbitration clause in the Partnership Agreement.

The same is true of Plaintiff's original claim for breach of fiduciary duty. Indeed, Plaintiff at times acknowledges as much, averring that the "Breach of Fiduciary duty, unethical theft of Clients, and theft of software-database" claims pled in the original complaint against Mr. Miller are "covered as a 'dispute' among the partners of Banner, and subject to arbitration." Pl.'s Reply Supporting Motion Compel ¶ 15 (citing Compl. ¶¶ 109–12). As such, both of Plaintiff's original claims logically arise out of or relate to the Partnership Agreement. And because the original complaint raised points that—at Plaintiff's own admission—fall within the Partnership Agreement's arbitration clause, the instant motion to compel is not a timely invocation of the right to arbitration. Plaintiff could have pursued arbitration at the time that it filed a complaint that contained an overlapping set of claims that raise tort litigation, fee-

arrangement, co-counsel, and legal ethics arguments. Banner Legal did not have to wait until the counterclaim containing an explicit breach of contract claim was filed to move to compel arbitration pursuant to the arbitration clause. To the extent that Plaintiff desired to arbitrate its claims rather than litigate, it could have, and should have, sought to arbitrate those claims at the beginning of this case, not seven months later.

In addition to failing to timely pursue arbitration, Plaintiff also "engaged in litigation activity that induced the other party and the district court to expend time and effort on disputes." *Partridge*, 289 F. Supp. 3d at 17 (quoting *Zuckerman Spaeder*, 646 F.3d at 923) (internal quotation marks omitted); *see also Khan*, 521 F.3d 421, 428 (discussing actions by movant that forced non-movant "to expend time and resources" in district court). The same day that the complaint was filed, Banner Legal sought immediate legal relief from this Court by moving for a temporary restraining order or preliminary injunction. *See* Compl. 1; *see generally* Pl.'s Mot. TRO. Plaintiff then took the further step of seeking an emergency hearing on the TRO, Pl.'s Mot. TRO 1, and even sought leave to present live testimony at this hearing, *see* Pl. Mot. Pursuant to LCvR 65.1(d), ECF No. 6. And on May 3, 2018, Plaintiff and Defendants both appeared before the Court for the requested emergency hearing on the temporary restraining order. When this Court denied Plaintiff's motion for a TRO, moreover, Plaintiff did not retreat from its litigation posture; to the contrary, it reinforced it by seeking an extension of time to reply to Defendants' opposition to Plaintiff's motion for a preliminary injunction. *See* Pl. Consent Mot. Ext. Time, ECF No. 12. Plaintiff did not move to compel arbitration until nearly seven months after filing the initial complaint, after the parties' attempts to reconcile via private mediation failed, after Defendants had filed their answer, *see* Defs.' Answer, and after discovery had commenced on October 17, 2018, *see* Scheduling Order, ECF No. 19. In short, Plaintiff's

conduct led this Court and Defendants to invest time and resources over the course of seven months.  Plaintiff could have avoided these unnecessary investments by pursuing arbitration seven months earlier.

Assessing Plaintiff's conduct in its totality and adding up Plaintiff's emergency motions and appearance before this Court, the months of private mediation that Plaintiff's litigation strategy led Defendants to pursue in an attempt at settlement, the fact that discovery in the suit had commenced at the time of Plaintiff's motion to compel arbitration, and Plaintiff's own arguments about the scope of the arbitration agreement, the Court finds that Banner Legal's actions are "inconsistent with the right to arbitrate," *Nat'l Found. for Cancer Research*, 821 F.2d at 775 (citing *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966)), and therefore these actions amount to a waiver of the right to arbitrate.  Accordingly, this Court will deny Plaintiff's motion to compel arbitration.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel arbitration and dismiss Defendants' counterclaim is denied.  Plaintiff is granted seven days from this decision to file an answer and to assert any affirmative defenses to Defendants' counterclaims.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 19, 2019                                                                                    RUDOLPH CONTRERAS
                                                                                                                     United States District Judge